# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DISTRICT

| | |
|---|---|
| ELORAC, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14-cv-1859 |
| v. ) | |
| ) | Hon. Jorge L. Alonso |
| SANOFI-AVENTIS CANADA INC. ) | |
| ) | |
| Defendant. ) | |

## SANOFI-AVENTIS CANADA INC.'S RESPONSE TO ELORAC'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

In the pending motion for leave to amend the complaint, filed five months after fact discovery closed, Plaintiff Elorac, Inc. ("Elorac") stretches an already imaginative claim past the breaking point. When Elorac first sued sanofi-aventis Canada Inc. ("Sanofi Canada") two years ago, Elorac alleged that Sanofi Canada was not promoting Zuacta correctly. Yet when Sanofi Canada attempted to order more Zuacta to fulfill demand, Elorac refused to supply the product. Elorac's actions completely belie its professed interest in bringing Zuacta to the worldwide market, which Elorac now asserts is a $360+ million dollar opportunity. (*See generally* ECF No. 190 ("Mot.").)

As a legal matter, similarly to its last motion to amend, Elorac largely makes no effort to change or add to its claims. Instead, Elorac merely wishes to make new allegations to disparage Sanofi Canada and seeks to make more allegations essentially to excuse its own recent non-performance of the October 30, 2008 License Agreement. (*See, e.g.,* Proposed Second Amended Complaint ("SAC") ¶¶ 128-41.)

Sanofi Canada denies Elorac's excuse-making for why it cannot carry out its fundamental duty under the License Agreement—to supply Zuacta to Sanofi Canada for sale. Elorac's

proposed allegations all but admit that it breached the License Agreement by refusing to fill Sanofi Canada's October 2015 and January 2016 order for Zuacta.

Sanofi Canada therefore opposes Elorac's Motion to the extent it proposes impertinent, scandalous, and inflammatory allegations, which should be stricken from the proposed amended pleading under Fed. R. Civ. P. 12(f). There is no need for such allegations in this Court and in this litigation. But Elorac's recent breach is and will surely be front-and-center in the litigation going forward, and Sanofi Canada will not oppose an amendment to the pleadings that fairly and concisely states the facts surrounding Elorac's failure to supply Zuacta. Accordingly, Sanofi Canada requests that the Court strike or bar allegations regarding (i) Sanofi Canada's putative discovery abuses (¶¶ 6-8, and parts of 9, 92, 122, and 151); (ii) recent media reports concerning Valeant (¶ 127); and (iii) DPT's termination of Elorac's manufacturing agreement, which occurred prior to the March 2014 commencement of this action (¶¶ 124-25 and parts of 9 and 163). As set forth more fully below, Fed. R. Civ. P. 12(f) and 15 vest the Court with substantial discretion to exclude these matters. If the amendment is permitted, Sanofi Canada will answer the amended pleading and reserves the right to assert all appropriate counterclaims.

## SUMMARY OF FACTUAL AND PROCEDURAL BACKGROUND[1]

Sanofi Canada entered the Civamide cream ("Zuacta") License Agreement with Winston Laboratories, Inc., effective October 30, 2008. (SAC at Ex. A.) On July 19, 2011, Valeant Pharmaceuticals International, Inc. (collectively with Valeant International (Barbados) SRL, "Valeant") announced by press release that it had signed a distribution agreement with Sanofi Canada to market and distribute Zuacta in Canada. (Available at: http://ir.valeant.com/news-releases/2011, and attached as Ex. 1 to Decl. of E. Roberts.) In October 2012, Elorac bought the

---

[1] Sanofi Canada offers this limited recitation rather than addressing each of Elorac's exaggerations and misstatements of the factual and procedural background.

2

Canadian rights to Zuacta from Winston (ELRC_00018911 – 20, attached as Ex. 2 to Decl. of E. Roberts), with eyes wide-open to the fact that Valeant was marketing the product. ███████████████████████████████████████████████████████████████████████████████████

Despite what the proposed Second Amended Complaint may imply, Valeant is no stranger to Elorac, nor does Elorac seem to believe Valeant is an irredeemable wrongdoer (*contra* SAC ¶ 127). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Now, however, Elorac seeks to disparage Valeant—a non-party—based on allegedly "relentless" media criticism comparing Valeant to Enron, WorldCom, and Tyco. (SAC ¶ 127.) At no point has Elorac stated or even circumstantially implied that Sanofi Canada shares the media's opinion, which in any event did not surface until October 2015—years after Sanofi Canada vetted Valeant as best able to promote Zuacta in Canada, and even after Elorac cut off the supply of Zuacta to Sanofi Canada.

Elorac further alleges that it experienced difficulties with DPT, the Zuacta contract manufacturer, due in part to a "lack of order volume." (ECF No. 190 ¶ 11.) On June 28, 2013, DPT notified Elorac of the termination of the DPT manufacturing agreement. (*Id.*) Nearly nine

3

months later, Elorac sued Sanofi Canada without any mention of the soured DPT relationship. (ECF No. 1.) Further, when Elorac sought leave in August 2015 to amend the Complaint "to add allegations of egregious intentional misconduct," the proposed amendment contained no mention of the DPT relationship. (ECF No. 60.) During fact discovery, Elorac resisted any effort to explore the costs it may have incurred as a result of Sanofi Canada's alleged breaches.[2] ▮

▮

▮

▮

▮

On October 1, 2015, Sanofi Canada requested that Elorac deliver additional Zuacta. (*See* SAC ¶ 129.) Elorac rebuffed this order, notwithstanding Elorac's alleged desire that Zuacta continue to be sold. (*See id.*) Sanofi Canada again placed an order for Zuacta on January 13, 2016, but Elorac rejected this order for technical reasons, too. (*See id.* at ¶ 133.) Two days later, Sanofi Canada placed a technically proper order, but Elorac still refused to supply the product. (*See id.* at ¶ 134.) When Sanofi Canada followed up with DPT—the only company with any experience manufacturing Zuacta—Elorac lashed out. (*See id.* at ¶ 136.) Ironically, Elorac accuses Sanofi Canada, the only company working to get more Zuacta to market, of having a "bad-faith motive" (*see id.*), a classic catch-22.

Elorac's proposed Second Amended Complaint would add or amend 23 allegations (¶¶ 8-10, 123-41, and 163), which are wildly off target. Elorac's total repudiation of its obligations manifested in its inability and refusal to supply Zuacta (*contra* License Agreement §§ 4.1, 4.7),

---

[2] Elorac's self-serving statement that Sanofi Canada would not be prejudiced by an amendment because "no additional fact discovery is needed" is, therefore, empirically false. (*Contra* ECF No. 190 ¶ 30.) That said, Sanofi Canada agrees that no further discovery would be necessary on the limited issues of Elorac's repudiation of the License Agreement (*i.e.*, SAC ¶¶ 128-41).

thus defeating Sanofi Canada's efforts to commercialize Zuacta. This is hardly evidence of Sanofi Canada's so-called "bad faith," no matter what Elorac alleges. Sanofi Canada is, therefore, prepared to meet certain portions of the proposed Second Amended Complaint (¶¶ 128-41) with a duly filed counterclaim seeking a declaration that Elorac's total breach of the License Agreement excuses Sanofi Canada from further performance of any kind.

## ARGUMENT

Federal Rules of Civil Procedure 12(f) and 15 vest the Court with discretion to control the threat of delay and prejudice from pleading amendments. *See McCoy v. Iberdola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (Rule 15); *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (Rule 12(f)). The Seventh Circuit has expressly confirmed a court's power to reject amendments "for ***undue delay alone*** . . . deep into the litigation." *McCoy*, 760 F.3d at 687 (emphasis added). Elorac's proposed amendment comes two years after it first sued Sanofi Canada and more than five months after fact discovery closed. The maneuver epitomizes the abuse courts must protect against: a "desperate effort to protract the litigation and complicate the defense," *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996), by adding "clutter and confusion," *see Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428-29 (7th Cir. 1993). Under Rule 15, the Court may reject attempts to "reiterate and embroider" claims "already presented . . . adding little, if anything, of substance to [the] case." *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 473 (7th Cir. 1991). Rule 12(f) provides independent authority to strike "redundant, immaterial, impertinent, or scandalous matter." *Delta Consulting Grp.*, 554 F.3d at 1141. Allegations should be excluded, *e.g.*, by striking, especially to "'remove unnecessary clutter from the case.'" *See Imperial Constr. Mgmt. Corp. v. Laborers' Int'l Union of N. Am., Local 96*, 818 F. Supp. 1179, 1186 (N.D. Ill. 1993) (quoting *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989)).

Setting aside the unconventional practice of seeking an amendment in the midst of expert discovery,[3] Elorac should not be allowed to leverage its recent misconduct as a means of parading additional salacious nonsense before the Court. The smattering of proposed allegations may not only require the parties to reopen discovery but actually threatens to overshadow and confuse legitimate disputes already presented in the extant pleadings. Consistent with Rules 12(f) and 15, the Court should narrow, strike, or bar the following proposed allegations:

(i) that Sanofi Canada's responses to discovery in litigation somehow constituted a bad-faith breach of the License Agreement (SAC ¶¶ 6-8,[4] and parts of 9, 92, 122, and 151);

(ii) that Sanofi Canada failed to provide Zuacta forecasts in all but "two of the eight quarters since this action was filed," which would have been apparent when Elorac last amended the Complaint (*see id.* at ¶ 124 and parts of 9 and 163);

(iii) that DPT terminated Elorac's manufacturing agreement in the period leading up to Elorac's current lawsuit (*id.* at ¶ 125), a dispute that Elorac did not just forfeit when it failed to include it in the initial complaint but, ▌

▌; and

(iv) that "[i]n the past few months, Valeant has seen its business model come under relentless criticism . . . [and] has repeatedly been labeled the Enron of the pharmaceutical industry" (SAC ¶ 127).

---

[3] Elorac could always move to conform the pleadings to the evidence relating to its failure to supply Zuacta and Elorac's financial failures resulting in their inability to perform their manufacturing obligations, once that evidence was presented during summary judgment or at trial. *See* Fed. R. Civ. P. 15(b)(2); *Dominguez v. Hendley*, 545 F.3d 585, 590-91 (7th Cir. 2008).

[4] The allegations at Paragraphs 6 and 7 appeared in the First Amended Complaint but should—especially now that discovery has concluded—be stricken.

*See Porter v. Int'l Bus. Machines Corp.*, 21 F. Supp. 2d 829, 831-32 (N.D. Ill. 1998) (striking allegations concerning times neither relevant, nor causally linked, to the claims); *Terrell v. Childers*, 889 F. Supp. 311, 315 (N.D. Ill. 1995) (striking "highly prejudicial" allegation that bootstrapped another pending but unproven claim against the same defendants); *Imperial Constr.*, 818 F. Supp. at 1186 (striking statements relating to matters on which the judge "had prior occasion to rule," particularly where the judge previously rejected the contention); *cf. Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 665 (7th Cir. 1992) (affirming ruling that struck "allegations devoid of any factual basis" despite references to third-party reports about the incident).

The allegations detailed above would clutter the complaint with impertinent and prejudicial matters, well beyond the time for completing fact discovery. The alleged discovery disputes have absolutely no bearing on whether or not Sanofi Canada properly commercialized Zuacta in Canada and have already been litigated—*ad nauseam*—during discovery. The sole and improper purpose for these allegations is to inject scandal and intrigue into the complaint. The same is true of the allegations concerning Sanofi Canada's alleged failure to provide Zuacta forecasts and the terminated DPT relationship. Elorac opted against including these matters in prior versions of the complaint and then opposed Sanofi Canada's efforts to conduct discovery regarding the DPT manufacturing relationship. Sanofi Canada was entitled to take Elorac at its word that the discovery was unneeded because Elorac would not be making any claims based on the termination of the DPT manufacturing agreement. The prejudice to Sanofi Canada were Elorac permitted to retract its waiver is self-apparent.

Lastly, Elorac does not attempt to disguise the motive for including proposed Paragraph 127, acknowledging the matters alleged therein are "sensational." Valeant is not a party to this

action, and Elorac's thinly veiled attempt to disparage the company based on sensationalistic media reporting—concerning, no less, matters that have absolutely nothing to do with the sale of Zuacta in Canada—violates the fundamental tenets of Rule 8. Whether or not true, the information that has emerged about Valeant since October 2015 has no more bearing on Sanofi Canada's decision to partner with Valeant in 2011 than it does on Elorac's decision to assume the role of Valeant's ultimate supplier in October 2012 and later willingness to enter into a direct contractual relationship with Valeant. In sum, the allegations in Paragraph 127 do not simply risk confusion, but appear affirmatively designed to mislead. The allegations have no place in the complaint and should be stricken or barred if Elorac is permitted to file its Second Amended Complaint.

Sanofi Canada has resolutely progressed this case through fact discovery and is in the midst of similarly arduous expert discovery further complicated by the three motions Elorac filed after submitting its own expert reports. Sanofi Canada will respond to any amended pleading as permitted by this Court, but urges the Court to strike the scandalous and inflammatory allegations obviously aimed at harming Sanofi Canada, harming non-party Valeant, and excusing Elorac's commercial failures, rather than intended to provide notice of the bases for Elorac's previously pleaded claims.

## CONCLUSION

For the foregoing reasons, sanofi-aventis Canada Inc. respectfully requests that the Court deny, in part, Elorac, Inc.'s Motion for Leave to File Second Amended Complaint and strike or bar the allegations at Paragraphs 6-9, 92, 122, 124-25, 127, 151, and 163 of the proposed Second Amended Complaint, as set forth more fully above; and grant such other relief as the Court deems just.

| | |
|---|---|
| **Dated**: May 27, 2016 | SANOFI-AVENTIS CANADA INC. |
| | By: /s/ *Christopher M. Strongosky* |
| Raj N. Shah (ARDC # 6244821) | Christopher M. Strongosky (*admitted pro hac vice*) |
| Eric M. Roberts (ARDC # 6306839) | Leeanne S. Mancari (*admitted pro hac vice*) |
| DLA Piper LLP (US) | DLA Piper LLP (US) |
| 203 North LaSalle Street, Suite 1900 | 1251 Avenue of the Americas |
| Chicago, Illinois 60601-1293 | New York, New York 10020 |
| (312) 368-4000 (p) | (212) 335-4500 (p) |
| (312) 236-7516 (f) | (212) 335-4501 (f) |
| raj.shah@dlapiper.com | christopher.strongosky@dlapiper.com |
| eric.roberts@dlapiper.com | leeanne.mancari@dlapiper.com |

<u>**Certificate of Service**</u>

   I hereby certify that on May 27, 2016, I electronically filed sanofi-aventis Canada Inc.'s **Response to Elorac's Motion for Leave to File Second Amended Complaint** using the ECF System for the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

         By: <u>/s/ *Christopher M. Strongosky*</u>

          Christopher M. Strongosky
          DLA Piper LLP (US)
          1251 Avenue of the Americas
          New York, New York 10020
          (212) 335-4500 (p)