# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ELORAC, INC.,                    )
                                 )
                   Plaintiff,    )        Case No. 14-cv-1859
                                 )
        v.                       )        Hon. Jorge Alonso
                                 )
SANOFI-AVENTIS CANADA INC.,      )
                                 )
                   Defendant.    )

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS
## MOTION TO EXCLUDE THE TESTIMONY OF EDWARD F. WALTON

# TABLE OF CONTENTS

**Page**

REPLY INTRODUCTION..................................................................................................1

ARGUMENT ...................................................................................................................2

A.  REGARDLESS OF DR. WALTON'S QUALIFICATIONS, ELORAC DOES NOT DISPUTE THAT HE FAILED TO USE HIS EVERYDAY METHODOLOGY ...........................................................................2

B.  ELORAC FAILED TO ESTABLISH THAT DR. WALTON'S ALTERNATIVE METHODOLOGY IS A RELIABLE BENCHMARK ANALYSIS..........................................................................................3

  1.  Elorac Cannot Demonstrate That Dr. Walton's Reliance On Sanofi Canada's Projections Was Justified Because He Admittedly Did Not Verify Them..............................................................4

  2.  Elorac Failed To Show That Dr. Walton's Actual Methodology Met The Standards Of Benchmarking Methodology Accepted In Other Cases ...........................................................................8

C.  THE PREPONDERANCE OF THE EVIDENCE DOES NOT SUPPORT A CONCLUSION THAT DR. WALTON'S ASSUMPTIONS WERE RELIABLE AND NOT JUST *IPSE DIXIT* AND SPECULATION.....................11

  1.  Despite Calling His Model "Conservative," The Only Adjustments Dr. Walton Makes Have The Effect Of Increasing Damages...................11

  2.  Dr. Walton's Breathtaking Assumptions Regarding Worldwide Regulatory Approval For Zuacta Are Unjustified And Exceed His Expertise ....................................................................12

  3.  Elorac Concedes That Potential Licensees Rejected The Zuacta Opportunity For Reasons Having Nothing To Do With Dr. Walton's Made-Up $3 Million (CAD) Threshold .....................................14

  4.  Dr. Walton's "Model" For Canadian Damages Is Not Admissible ...........15

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brown v. Burlington N. Santa Fe Ry. Co.,*
   765 F.3d 765 (7th Cir. 2014) ........................................................................... 3, 8

*Clark v. Takata Corp.,*
   192 F.3d 750 (7th Cir. 1999) ................................................................................ 2

*Fail-Safe LLC v. A.O. Smith Corp.,*
   744 F. Supp. 2d 870 (E.D. Wisc. 2010) ......................................................... 5, 7, 12

*Kumho Tire Co., Ltd. v. Carmichael,*
   526 U.S. 137 (1999) .............................................................................................. 2

*Lewis v. Citgo Petroleum Corp.,*
   561 F.3d 698 (7th Cir. 2009) .............................................................................. 11

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.,*
   No. 08 cv 242, 2010 WL 3397358 (N.D. Ill. Aug. 24, 2010) ................................ 7

*LK Nutrition, LLC v. Premier Research Labs, LP,*
   No. 12 cv 7905, 2016 WL 4987429 (N.D. Ill. Sept. 19, 2016) ..................... 4, 5, 13

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,*
   387 F. Supp. 2d 794 (N.D. Ill. 2005) ................................................................. 8, 9

*Orthofix Inc. v. Gordon,*
   No. 13 cv 01463, 2016 WL 1273160 (C.D. Ill. Mar. 31, 2016) .......................... 10

*Smart Mktg. Grp., Inc. v. Publc'ns Int'l, Ltd.,*
   No. 04 cv 146, 2014 WL 624933 (N.D. Ill. Feb. 18, 2014) ................................ 6, 7

*Sys. Dev. Integration, LLC v. Computer Sci. Corp.,*
   886 F. Supp. 2d 873 (N.D. Ill. 2012) ................................................................... 7

*Target Mktg. Publ'g, Inc. v. ADVO, Inc.,*
   136 F.3d 1139 (7th Cir. 1998) .......................................................................... 5, 11

*TVT Records v. Island Def Jam Music Grp.,*
   250 F. Supp. 2d 349 (S.D.N.Y. 2003) ................................................................ 10

*Victory Records, Inc. v. Virgin Records Am., Inc.,*
   No. 08 cv 3977, 2011 WL 382743 (N.D. Ill. Feb. 3, 2011) ................................ 4, 8

*Wilbern v. Culver Franchising Sys., Inc.*,
No. 13 cv 3269, 2015 WL 5722825 (N.D. Ill. Sept. 29, 2015)................................10

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
395 F.3d 416 (7th Cir. 2005) .........................................................................2, 5, 6

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
No. 01 cv 4366, 2003 WL 21911068 (N.D. Ill. Aug. 7, 2003)................................9

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
No. 01 cv 4366, 2003 WL 22284326, (N.D. Ill. Oct. 2, 2003)................................5

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 .......................................................................................................13

Fed. R. Evid. 701 .......................................................................................................14

Fed. R. Evid. 702 .......................................................................................................14

## REPLY INTRODUCTION

In its moving papers, sanofi-aventis Canada Inc. ("Sanofi Canada") established that the testimony of Elorac, Inc.'s ("Elorac's") damages expert, Dr. Edward Fintan Walton, should be excluded in its entirety. (*See generally* Def.'s Mem. (ECF No. 276).) Sanofi Canada demonstrated that Dr. Walton's ██████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████. (*Id.* at 14-22.) Sanofi Canada also established that, even if that theory passed *Daubert* standards (and it does not), Dr. Walton was not qualified to make certain regulatory and product equivalency assumptions on which he relied. (*Id.* at 23-24.) Lastly, Sanofi Canada argued that Dr. Walton's basic arithmetic calculations of the alleged damages in Canada, using Sanofi Canada's internal forecasts, were obvious and would not assist the jury. (*Id.* at 24.)

In response, Elorac omits a ████████████████████████████████ ████████████████████████████████████ Elorac does not dispute that Dr. Walton did not employ his everyday methodology, but nonetheless contends that because he is supposedly well-qualified and labeled his methodology a "benchmark analysis," the Court should permit him to testify. (Pl.'s Resp. (ECF No. 300) at 7-9, 23-24.) Elorac also argues strenuously that Dr. Walton's analyses are factually sound and his assumptions reliable. (*Id.* at 9-22.) Lastly, Elorac concedes that Dr. Walton's methods for calculating Canadian damages are simple, but disputes that this is a basis for excluding his testimony. (*Id.* at 24-25.)

The majority of Elorac's arguments is simply Dr. Walton's testimony, as if Dr. Walton is capable of objectively assessing the reliability of his methodology. But the Court, not Dr. Walton, is the gatekeeper, and the Court cannot simply rely on Dr. Walton to judge his own

reliability. For a variety of reason, as demonstrated below, Elorac's arguments are unavailing. The Court should exclude Dr. Walton's testimony in its entirety.

## ARGUMENT

### A. REGARDLESS OF DR. WALTON'S QUALIFICATIONS, ELORAC DOES NOT DISPUTE THAT HE FAILED TO USE HIS EVERYDAY METHODOLOGY

In its opening papers, Sanofi Canada demonstrated that Dr. Walton's opinions should be excluded because Dr. Walton had admitted, in violation of Seventh Circuit and Supreme Court precedent, that he did not use the same, reliable methods to calculate damages here as he would use to advise a business client. (Def.'s Mem. at 2, 11-12, 21.) In response, Elorac suggests that financial modeling for deals versus litigation is "starkly different" because Dr. Walton testified that litigation is "unique." (Pl.'s Resp. at 8.) Elorac also touts Dr. Walton's 30-year experience in the pharmaceutical industry. (*Id.* at 3-6.) Elorac misses the point.

"[Q]ualifications alone do not suffice. A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under . . . *Daubert*." *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999). "Intuition" and "expertise" are not a substitute for reliable methodology. *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005). A reliable methodology must exhibit the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

In the end, Elorac does not, and cannot, claim that Dr. Walton has used the same level of intellectual rigor he uses in his everyday practice. ████████████████████

████████████████████████████████████████

████████████████████████████████ Claiming that litigation is "starkly different," Elorac attempts to salvage Dr. Walton's opinion by invoking a supposedly

"exceedingly well-established and acceptable" "benchmark" analysis because litigation. (Pl.'s Resp. at 11.) This is a dodge foreclosed by *Kumho Tire* and Seventh Circuit precedent. (Def.'s Mem. at 21.) As discussed below, Elorac's "benchmarking" label is also misleading.

In the end, Elorac's position is both incorrect and a red herring. Dr. Walton's qualifications do not salvage his unreliable methodology. His testimony should be excluded.

## B. ELORAC FAILED TO ESTABLISH THAT DR. WALTON'S ALTERNATIVE METHODOLOGY IS A RELIABLE BENCHMARK ANALYSIS

In its opening papers, Sanofi Canada argued that Dr. Walton's reliance on internal projections and unreasonable assumptions rendered his opinions *ipse dixit* rather than the product of reliable methods. (Def.'s Mem. at 14-22.) Elorac's response is two-pronged. First, Elorac implies that Dr. Walton's method involves an acceptable benchmark analysis. (Pl.'s Resp. at 11.) Second, Elorac contends that Dr. Walton has "provided support" for his reliance on Sanofi Canada's forecast because Sanofi Canada is "competent" and the ones he selected were the "lowest" projections, not the "highest" ones. (*Id.* at 9-16.)

Merely affixing a label to a methodology does not make it reliable. "[A]n expert must do more than just state that she is applying a respected methodology; she must follow through with it." *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773 (7th Cir. 2014). As demonstrated in Sanofi Canada's opening brief, Dr. Walton's methodology is overrun with, and in fact driven by, unjustifiable *ipse dixit* and other assumptions—a clear red flag under Seventh Circuit precedent. Before applying *any* benchmark, Dr. Walton assumed, without testing:

(Def.'s Mem. at 9-11.) ████████████████████████████████████

████████████████████ and they are entirely unsupported and unreliable. Accordingly, Dr.

Walton's opinion is inadmissible.

Moreover, the claim that Dr. Walton used a benchmark analysis to derive these assumptions is false. His model's most important inputs are peak year sales numbers, the growth curve, and the royalty rate, all of which Dr. Walton blindly copied from one of Sanofi Canada's dozens of projections. He did not undertake any analysis to reliably ascertain or calculate the data. Dr. Walton does not obtain these numbers through benchmarking, contrary to Elorac's arguments in opposition. ████████████████████████████████████

████████████████████████████ Not only does Elorac's two-prong defense misstate Dr. Walton's methodology, it is also legally unsupportable for the reasons below.

### 1. Elorac Cannot Demonstrate That Dr. Walton's Reliance On Sanofi Canada's Projections Was Justified Because He Admittedly Did Not Verify Them

Citing the Seventh Circuit's decision in *Zenith Electronics* and other cases, Sanofi Canada established that it is improper for an expert simply to copy a company's projections into a damages model. (Def.'s Mem. at 19-23; *see also See LK Nutrition, LLC v. Premier Research Labs, LP*, No. 12 cv 7905, 2016 WL 4987429, at *9 (N.D. Ill. Sept. 19, 2016); *Victory Records, Inc. v. Virgin Records Am., Inc.*, No. 08 cv 3977, 2011 WL 382743, at *2 (N.D. Ill. Feb. 3, 2011).) In opposition, Elorac offers pages of meaningless distinctions trying to argue that *Zenith*

*Electronics* does not *per se* bar Dr. Walton's opinion.[1] (Pl.'s Resp. at 9-13.) *Zenith Electronics* is straightforward and applies here.

In the *Zenith Electronics* cases, the expert was disqualified for relying on projections—his own and the company's—without being able to explain why they were "an accurate estimate using professional methods." *See Zenith Elecs.*, 395 F.3d at 418-19; *see also Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, No. 01 cv 4366, 2003 WL 22284326, at *2 (N.D. Ill. Oct. 2, 2003) (barring introduction of the company's projections for use in the expert's damages calculation). After *Zenith Electronics*, the courts must exclude an expert who relies on a company's projections without offering a scientific methodology to conclude that the projections appropriately "cop[e] with variance" and "isolate the effects of multiple variables." *Zenith Elecs.*, 395 F.3d at 419; *see also LK Nutrition*, 2016 WL 4987429, at *8 (expert's analysis failed to assess a variable's impact on the projections); *Fail-Safe LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 888 (E.D. Wisc. 2010) ("The reliability of [the defendant's] early hopes for the [product's] market potential and the underlying data [the defendant] used should have been independently verified . . . .") (internal quotations omitted); *cf.* Def.'s Mem. at 20 (citing cases).

Elorac reduces *Zenith Electronics* to (i) the Seventh Circuit's observation that the expert "either had no method or could not describe one" (Pl.'s Resp. at 10-11) and (ii) the expert's attempt to justify his projections by calling the target market "unique" (*id.* 12-13). Sanofi Canada has now cited a slew of cases turning away experts who relied on internal projections. Elorac's invocation of a "benchmark analysis" *based on* the copied projections does not render

---

[1] Elorac asserts that *Zenith Electronics* does not apply to defendants' projections. Not so. The Seventh Circuit rejects an expert's blind reliance on company projections, even the defendant's projections. *See Target Mktg. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1144-45 (7th Cir. 1998); *see also Fail-Safe, LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 888 (E.D. Wisc. 2010). The Seventh Circuit worries that a company, like Sanofi Canada, builds the projections not as a defendant, but as a company with a direct and significant financial interest in the projections coming true. This is the very "hope" that infects the projections with unscientific optimism, rendering them unreliable. *See Zenith Elecs.*, 395 F.3d at 420.

Dr. Walton's reliance on Sanofi Canada's projections proper.  (*See also* Section B.2 below.)

Long and short, Dr. Walton's following concession forecloses his reliance on the projections:

███████████████████████████████████████████

████████████████████████████

██████████████████████████████████

█████████████████ Dr. Walton has not described how he "cop[ed] with variance" and "isolate[d]

the effects of multiple variables" as required by the Seventh Circuit.  *See Zenith Elecs.*, 395 F.3d

at 419.  ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

Elorac also argues that Dr. Walton satisfied *Zenith Electronics* by "'provid[ing] support

for his reliance'" on the projections.  (*See* Pl.'s Resp. at 13 (citing *Smart Mktg. Grp., Inc. v.

Publc'ns Int'l, Ltd.*, No. 04 cv 146, 2014 WL 624933, at *3 (N.D. Ill. Feb. 18, 2014)).)  As

"support," Elorac cites █████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ A review of the cases Elorac cites, however, shows that "support" actually

means *methodological* support to verify the projections are the results of scientific analysis.

For example, in *Smart Marketing*, the expert relied on projections that both parties had

relied on to negotiate the allegedly breached contract.  In using the two-year projections, the

expert first compared the projections to eight months of actual, historical sales and determined

that the projections were within 10% of the historical monthly run rate.  *See* 2014 WL 624933, at

*3.  The court recognized that the expert did not "just [take] the [projections] and plug[] them

into a formula to obtain a final number" but took "steps that validate[d]" the projections "provide[d] a reasonable basis" for his opinion. *Id.* at *3. If anything, *Smart Marketing* casts a bright spotlight on Dr. Walton's concession that he did not validate Sanofi Canada's projections.

Elorac also misplaces its reliance on the decision in *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 cv 242, 2010 WL 3397358 (N.D. Ill. Aug. 24, 2010). (*See* Pl.'s Resp. at 14.) Contrary to Elorac's recitation, the expert in *LG Electronics* did not simply copy the defendant's sales projections as Dr. Walton does here. Instead, the expert compared two sales forecasts, created just weeks apart, where a single change to the inputs (the addition of an allegedly false name to the product) increased sales by 21 percent. The court specifically found that the expert:

> explained at length the reasons for his reliance on [the] forecasts and his methodology *in applying figures derived from those forecasts to actual sales* . . . Moreover…., Dr. Rao explained that the *process he followed* has been subjected to *peer review*. Dr. Rao cites a number of reference manuals in his expert report and the *reference manual on scientific evidence form the Federal Judiciary Center* also describes the approach used by Dr. Rao.

2010 WL 3397358, at *7 (emphasis added). Unlike Dr. Rao in *LG Electronics*, Elorac and Dr. Walton fail to cite any peer reviewed literature or reference manuals that endorse copying the Canadian growth curve and peak sales from a defendant's internal projections as a means of calculating worldwide damages. *Cf. Fail-Safe*, 744 F. Supp. 2d at 889 ("Concluding that an event will occur because someone else has concluded that [event] will occur is utterly circular in its logic and is the epitome of an unreliable methodology.") (internal quotation omitted).[2]

Dr. Walton cannot justify using Sanofi Canada's projections as the base of his opinion. His methodology is unreliable, and the Court should exclude his testimony in its entirety.

---

[2] Elorac also cites to *Sys. Dev. Integration, LLC v. Computer Sci. Corp.*, 886 F. Supp. 2d 873 (N.D. Ill. 2012). That court found that the expert did "not simply rely on . . . untested internal projections" but rather on "specific figures" (prices and volumes) agreed to in the allegedly breached contract. Here, Dr. Walton does not contend that the parties agreed to the dollar values he has projected for Zuacta.

## 2. Elorac Failed To Show That Dr. Walton's Actual Methodology Met The Standards Of Benchmarking Methodology Accepted In Other Cases

Elorac also rebuffs Sanofi Canada's objection that Dr. Walton's opinions rely on *ipse dixit* rather than reliable methodology because a small portion of Dr. Walton's methodology involves an accepted benchmark analysis. (Pl.'s Resp. 7, 11.) In addition to being a non-sequitur, this gives Dr. Walton too much credit. Merely affixing the label to his methodology does not make what he did here reliable. *See Brown*, 765 F.3d at 773.

To begin, benchmarking lends itself to abuse. It is seductive to compare a new product to an existing, successful one, and conclude that the new product should have achieved similar success. Dr. Walton has written about this phenomenon and concluded that "benchmarking on its own has limited utility," leading him to "prefer an integrated approach to valuations that includes both benchmarking and discounted cash flow models . . . with decision tree analysis and Monte Carlo simulations." (Walton, F., "The Value of Valuations," Apr. 1, 2005, Ex. 1 to ECF No. 279.) Again, Dr. Walton did not use his "preferred" method, implying that the Seventh Circuit demands less of him in his role as a damages expert than in his regular practice.

In the *Daubert* gatekeeping role, courts scrutinize experts' benchmarks to ensure that products "as nearly identical . . . as possible." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 812 (N.D. Ill. 2005). "If they are not, the comparison is manifestly unreasonable." *Id.* The expert must use a method to select benchmarks "that assures the samples are appropriately representative" of the product. *Victory Records*, 2011 WL 382743, at *4.

Clearly, Sanofi Canada's projections, not Dr. Walton's benchmarks, do most of the work in his opinions. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ██████ (*See* Def.'s Mem. at 23; *compare Loeffel Steel*, 387 F. Supp. 2d at 812 *with* Report

at 7.) ████████████████████████████████████████████████████

████████████████████████████████████ this attempt to "cross-check" after the fact is "insufficient

to validate that the methodology used to generate the results is reliable."  *See Zenith Elecs. Corp.*

*v. WH-TV Broad. Corp.*, No. 01 cv 4366, 2003 WL 21911068, at *2 (N.D. Ill. Aug. 7, 2003).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████ Sanofi Canada has not, however, challenged Dr. Walton's experience in deal making.

Instead, Sanofi Canada objected to Dr. Walton's attempt to "cross-check" peak year sales figures

because he lacked the medical qualifications necessary to control for, among other things,

different efficacies, safety, patient populations, competitive pressures, and limitations on usage

between Zuacta and the comparator products, instead treating the market as "monolithic."  *See*

*Loeffel Steel*, 387 F. Supp. 2d at 812.

But the comparators must be "nearly identical to" Zuacta under Seventh Circuit

precedent, and Dr. Walton should have consulted prescribing physicians to determine how

Zuacta's economic prospects were impacted, for example, by the limited indication for treating

*severe* knee osteoarthritis, and only if used in conjunction with NSAIDs or COX-II drugs after

those treatments did not work.  (*See* Def.'s Mem. at 23-24; Tr. 54:18-55:1.)

Instead of addressing these issues, Elorac implies that it would be improper for the Court

to examine Dr. Walton's methodology because "[n]umerous courts, including ones in this

District, have permitted the use of benchmark analysis by experts opining on lost profits."  (Pl.'s

Resp. at 11.)   These putatively "numerous" cases include just three easily distinguishable decisions, only one of which comes from the Northern District of Illinois.

*Wilbern v. Culver Franchising Sys., Inc.*, does not support the use of a benchmark here. That court narrowly held that "[i]n *the franchise context* . . . courts have held that *historical data from franchise operations* can be a proper yardstick." *See* No. 13 cv 3269, 2015 WL 5722825, at *31 (N.D. Ill. Sept. 29, 2015) (emphasis added).   Unlike two stores in the same fast food franchise, various medicines with different indications, modes of application, side effects, and track records (among other variables that Dr. Walton makes no effort to control for) do not readily lend themselves to comparison for the purposes of generating damages models.

In *Orthofix Inc. v. Gordon*, a former employee poached her employer's customers.   The expert compared before-and-after sales into the defendant's sales territory relative to her departure.   The court accepted the testimony because the defendant "ma[de] no argument as to why the [benchmark] was an inaccurate comparator" and it was "difficult to imagine more like comparators, differing . . . in [no] measurable variable."   No. 13 cv 01463, 2016 WL 1273160, at *4 (C.D. Ill. Mar. 31, 2016).   By contrast, Sanofi Canada identifies many distinctions between Zuacta and Dr. Walton's benchmarks that he admits are relevant (*e.g.* Tr. at 139:11-141:14).

In *TVT Records v. Island Def Jam Music Grp.*, the court permitted an expert to extrapolate sales of a new album featuring the artist Ja Rule using prior Ja Rule albums. "Because Ja Rule is one of only three members of [the musical group] CMC, it is reasonable to rely, as [the expert did], on Ja Rule's popularity and the performance of his solo albums as a basis to project CMC Album sales." 250 F. Supp. 2d 341, 349 (S.D.N.Y. 2003).   In stark contrast, Dr. Walton made no effort to evaluate actual, historical Zuacta sales to project future performance.

If anything, Elorac's cases highlight the inadequacy of Dr. Walton's methodology. In each of those cases, the court was provided with apple-to-apple comparisons based on more than the experts' *ipse dixit* that the comparators were similar. Elorac has failed to identify a single case that would accept the so-called "benchmark analysis" that Dr. Walton has actually applied here. Accordingly, the Court should exclude Dr. Walton's testimony for this reason, too.

## C. THE PREPONDERANCE OF THE EVIDENCE DOES NOT SUPPORT A CONCLUSION THAT DR. WALTON'S ASSUMPTIONS WERE RELIABLE AND NOT JUST *IPSE DIXIT* AND SPECULATION

"The proponent of the expert bears the burden of demonstrating," by a preponderance of the evidence, "that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Elorac must demonstrate that Dr. Walton's assumption are connected to the data by more than *ipse dixit*. *Target Market Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1144 (7th Cir. 1998). In several respects, Elorac fails to do so.

### 1. Despite Calling His Model "Conservative," The Only Adjustments Dr. Walton Makes Have The Effect Of Increasing Damages

In its moving papers, Sanofi Canada illustrated how Dr. Walton's assumptions and unsupported adjustments to Sanofi Canada's model increased damages. (Def.'s Mem. at 22.)

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████ This is not a reliable assumption, and the Court should not admit Dr. Walton's opinion just because he declares that his assumptions are "safe" or "conservative" (Pl.'s Resp. at 19-20).

Elorac's defense of Dr. Walton parrots his inadmissible, naked assertions. ████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Elorac's reference to using a discount rate is not a justification for making unreliable assumptions. A discount rate is necessary, not "conservative." *See Fail-Safe*, 744 F. Supp. 2d at 894 ("The Seventh Circuit has noted the extreme importance in using an accurate discount rate when calculating damages."). ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████[3]

Elorac fails to carry its burden of demonstrating that Dr. Walton's testimony is reliable. The Court should not credit a model that speculatively builds on assumptions and *ipse dixit*.

2.      **Dr. Walton's Breathtaking Assumptions Regarding Worldwide Regulatory Approval For Zuacta Are Unjustified And Exceed His Expertise**

In its opening papers, Sanofi Canada demonstrated how Dr. Walton, who is "not a regulatory expert" (Tr. 69:13), impermissibly dressed up regulatory opinions regarding the speed to market in the U.S., Europe, and Japan as assumptions. (Def.'s Mem. at 18-19.) Elorac does not dispute that Dr. Walton's testimony must be limited to his areas of expertise. (Pl.'s Resp. at 20-21.) Instead, Elorac attempts to skirt the rule by reasserting that Dr. Walton was qualified to adopt "assumptions." (*See id.* at 21.)

---

[3] ████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

First, Elorac conflates Dr. Walton's willingness to make assumptions with his qualification to make them. Elorac thus parrots Dr. Walton's offending opinions without any effort to establish why he is even remotely qualified to render them. ███████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████ Anyone who reads the newspaper knows that the pharmaceutical market is littered with products that failed regulatory trials; it is safe to say that the innovators of those products all assumed a different outcome. Regulatory approval is not something to be assumed, but rather something an expert must demonstrate beyond the burden of proof. In performing its gatekeeper role, this Court must ensure that Dr. Walton stays within his area of expertise (and away from areas in which he disclaims expertise). Elorac's effort to qualify Dr. Walton here is pure bootstrapping, and the Court must exclude his testimony.

Second, Elorac improperly attempts to bolster Dr. Walton's testimony by citing materials on which Dr. Walton did not rely. (*See* Pl.'s Resp. at 21 n.2 (citing ELRC_00008021-25) and 22 (citing ELRC_00008685-87).) Incredibly, neither of these two documents were listed in Dr. Walton's reliance list. (*See* Report at App'x 3.) If Elorac intended for Dr. Walton to rely on these materials, it should have provided him with them before he rendered his opinion. This Court cannot "correct for [Elorac's] failure to do so." *LK Nutrition*, 2016 WL 4987429, at *11 n.5; *see* Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring disclosure of "the facts or data considered").

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Ultimately, Dr. Walton

rendered speculative testimony about Zuacta's worldwide regulatory prospects, in violation of

Fed. R. Evid. 701 and 702. Elorac's ability subsequently to locate and identify documents Dr.

Walton never reviewed does not change the fact that Dr. Walton was speculating when he

adopted assumptions well beyond his area of expertise. An expert cannot do that.

3. **Elorac Concedes That Companies Rejected The Zuacta Opportunity For Reasons Unrelated To Dr. Walton's Made-Up $3 Million (CAD) Threshold**

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████

In response, Elorac ignores its own burden to demonstrate the reliability of Dr. Walton's

and unfairly criticizes Sanofi Canada for not "proving" the absence of evidence and for citing

only *some* of the reasons for declining the Zuacta opportunity stated in only *some* of the email

record. (Pl.'s Resp. at 16-19.) █████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████ Pharmaceutical companies'

complicated decisions about whether to license Zuacta cannot be reduced to a single cause (*i.e.*,

the failure to achieve an internal target) absent a far more robust analysis than Dr. Walton

undertook, especially where documentary evidence demonstrates that licensors passed on Zuacta for multitudes of reasons other than Canadian sales. The emails, both those cited by Sanofi Canada and those now presented by Elorac, collectively demonstrate that it is truly foolish to presume that there is a singular reason why a company would not license Zuacta.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ █ ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Elorac has, therefore, failed to carry its burden to demonstrate that Dr. Walton's methodology and assumptions supporting his causation opinion are reliable, and the Court should exclude Dr. Walton's testimony in its entirety.

**4.      Dr. Walton's "Model" For Canadian Damages Is Not Admissible**

With respect to Dr. Walton's calculation of Canadian damages, Sanofi Canada cited cases barring opinions that would be "obvious" or consist of "simplistic extrapolation and childish arithmetic." (Def.'s Mem. at 24.) None of those cases cited by Elorac in opposition supports using an expert to perform a simple, contractual calculation on an opponent's internal forecasts. (*See* Pl.'s Mem. at 25 (collecting cases).)

<strong>CONCLUSION</strong>

Sanofi Canada respectfully requests that the Court exclude Dr. Walton's testimony.

---

[4] S█████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

**Dated**: October 5, 2016

SANOFI-AVENTIS CANADA INC.

By: /s/ *Christopher M. Strongosky*

| | |
|---|---|
| Raj N. Shah (ARDC # 6244821) | Christopher M. Strongosky (*admitted pro hac vice*) |
| Eric M. Roberts (ARDC # 6306839) | Leeanne S. Mancari (*admitted pro hac vice*) |
| DLA Piper LLP (US) | DLA Piper LLP (US) |
| 203 North LaSalle Street, Suite 1900 | 1251 Avenue of the Americas |
| Chicago, Illinois 60601-1293 | New York, New York 10020 |
| (312) 368-4000 (p) | (212) 335-4500 (p) |
| (312) 236-7516 (f) | (212) 335-4501 (f) |
| raj.shah@dlapiper.com | christopher.strongosky@dlapiper.com |
| eric.roberts@dlapiper.com | leeanne.mancari@dlapiper.com |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2016, I electronically filed the foregoing Notice of Motion and **Defendant's Reply Memorandum in Support of Its Motion to Exclude the Testimony of Edwin F. Walton** using the ECF System for the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

By: _/s/ Christopher M. Strongosky_

Christopher M. Strongosky
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500 (p)